**MUSICK, PEELER & GARRETT LLP**

624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone (213) 629-7600
Facsimile (213) 624-1376

Juan A. Torres (State Bar No. 128181)
 *j.torres@musickpeeler.com*
Whit Bivens (State Bar No. 190727)
 *w.bivens@musickpeeler.com*

Attorneys for Plaintiffs Jose Rigoberto Ruiz Rosas
and P'urhepecha Del Valle, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JOSE RIGOBERTO RUIZ ROSAS, an individual; P'URHEPECHA DEL VALLE, INC., a California Corporation,<br><br>              Plaintiffs,<br><br>       vs.<br><br>YASA MARKETING INC. DBA MAZUMA TRADING CO., an Illinois Corporation,; JORGE GUTIERREZ, an individual; and DOES 1 through 50,<br><br>              Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**1.  Interference With Contractual Relationship**<br>**2.  Tort of Another**<br>**3.  Federal Trademark Infringement**<br>**4.  Violation of Lanham Act Section 43(a)**<br>**5.  Common Law Trademark Infringement**<br>**6.  Cancellation of Trademark Registration**<br>**7.  Violation of California *Business & Professions Code* §§ 17200, *et al.***<br>**8.  Common Law Unfair Competition**<br>**9.  Intentional Interference With Prospective Economic Advantage**<br>**10.  Negligent Interference With Prospective Economic Advantage**<br>**11.  Unjust Enrichment**<br><br>***[Filed Concurrently with Notice of Interested Parties and Civil Cover Sheet]***<br><br>          **JURY TRIAL DEMANDED** |

Plaintiffs JOSE RIGOBERTO RUIZ ROSAS and P'URHEPECHA

DEL VALLE, INC. (collectively referred to herein as "Plaintiffs") hereby complain

and allege as follows:

# THE PARTIES

## A.    Plaintiffs

1.    Plaintiff JOSE RIGOBERTO RUIZ ROSAS (hereinafter referred to as "RUIZ") is an individual who resides in the City of Orange, County of Orange, State of California.

2.    Plaintiff P'URHEPECHA DEL VALLE, INC. (hereinafter referred to as "P'URHEPECHA DV") is a corporation organized under the laws of the State of California with its principle place of business in the City of Orange, County of Orange, State of California.  P'URHEPECHA DV is fully owned by RUIZ.

## B.    Defendants

3.    Plaintiffs are informed and believe, and based thereon allege, that Defendant YASA MARKETING INC. (hereinafter referred to as "YASA") is, and at all times mentioned herein was, a corporation organized under the laws of the State of Illinois and that its principle place of business is in the City of Chicago, Illinois.  Plaintiffs are informed and believe, and based thereon allege, that YASA does, and at all times mentioned herein did, business under the name of MAZUMA TRADING CO. (hereinafter referred to as "MAZUMA").  YASA and MAZUMA will hereafter be collectively referred to as YASA.

4.    Plaintiffs are informed and believe, and based thereon allege, that YASA operates, and at all times mentioned herein operated, a warehouse in the City of Chicago, Illinois.  YASA also operates, and at all times mentioned herein operated, a warehouse in the City of Laredo, Texas.  YASA distributes products from these warehouses that it sells in Illinois, Texas, California and other States.

5.    Defendant JORGE GUTIERREZ (hereinafter referred to as "GUTIERREZ") is an individual.  Plaintiffs are informed and believe, and based thereon allege, that GUTIERREZ is, and at all times mentioned herein was, a resident of the State of Illinois.  GUTIERREZ is an owner and/or otherwise a principal of YASA, and operates and/or otherwise oversees or directs the business of YASA.

6.     Defendants Does 1 through 50, whose identities and addresses are unknown to Plaintiffs, are individuals and/or corporate entities engaged in the unlawful activities complained of herein.  The Complaint will be amended, if necessary, to include the name or names of these individuals and/or entities when such information becomes available.

7.     Plaintiffs are informed and believe, and based thereon allege, that at all times mentioned herein, each of the Defendants, including each of the Defendants sued under fictitious names, and each of those agents, employees, and/or independent contractors identified herein, was the agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of this agency or employment.

## JURISDICTION AND VENUE

### A.     Jurisdiction

8.     This Court has original jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1332 because the matter arises in diversity jurisdiction since it is between citizens of different States and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00).

9.     Some of the claims in this Complaint arise under and are related to the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*., thus conferring to this Court original and Federal question jurisdiction over the matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 and the doctrine of pendant jurisdiction over Plaintiffs' state law claims.

11.     This Court has personal jurisdiction over Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure and the California Long Arm Statute, California *Code of Civil Procedure* § 410.10, because Plaintiffs are informed and believe, and based thereon allege, that Defendants conduct business in California.  This business

1  includes providing, advertising, selling, and/or otherwise offering for sale goods and

2  services in California.  Additionally, Defendants have engaged in conduct outside of

3  California that has had an effect on Plaintiffs in California.

4  **B.    Venue**

5  12.    Venue is proper in this Judicial District under 28 U.S.C. § 1391 because (1)

6  Defendants conduct business in this District, (2) a substantial part of the events or

7  omissions giving rise to Plaintiffs' claims occurred in this District, (3) the unlawful

8  acts of Defendants giving rise to Plaintiffs' claims have been committed within this

9  District and have had and will have effect in this District, (5) YASA is a resident in

10 this District, and (6) Plaintiffs reside and conduct business in this District.

11

12                          **BACKGROUND FACTS**

13 **A.    RUIZ Exclusive Distributor Contract and Use of Trademark in the
       United States**

14

15            **1.    RUIZ's oral exclusive distributor agreement**

16 13.    In 2011, RUIZ entered into an oral agreement with Antonio Farfán Martinez

17 ("Martinez") for RUIZ to be the exclusive distributor in the United States and other

18 areas of salsa products created, produced, and packaged by Martinez in Mexico

19 ("Salsa Products") under the trademark Cosecha P'urhepecha Clasica's

20 ("COSECHA P'URHEPECHA MARK").  As part of the agreement, Martinez

21 granted to RUIZ an ownership right in the COSECHA P'URHEPECHA MARK and

22 authorized RUIZ to register the MARK in the United States as his trademark for his

23 use in the United States.  Martinez also granted to RUIZ an ownership right in the

24 uniquely designed plastic bottle in which Martinez packaged the Salsa Products so

25 that RUIZ could have the exclusive right to sell the Salsa Products in the United

26 States and other areas using the same bottle design, which RUIZ did.  Additionally,

27 Martinez granted to RUIZ an ownership right in the Salsa Products recipes to further

28 confirm RUIZ's exclusive distributorship right.

**2.   RUIZ's incontestable trademark registration**

14.   In March 2012, RUIZ applied to the United States Patent and Trademark Office ("USPTO") for the registration of the COSECHA P'URHEPECHA MARK. The USPTO approved the application and officially registered the MARK on February 5, 2013 bearing Registration Number 4,285,208 (the "Registration").  A copy of the Registration Certificate is attached as Exhibit A and incorporated herein. The following is a copy of the drawing in black and white:



15.   To keep a federal trademark registration in force, the registrant must file a "Section 8" Affidavit or Declaration (15 U.S.C. § 1058) between the fifth and sixth anniversary of the registration date.  On February 5, 2019, through other counsel who is not Plaintiffs' counsel of record in this action, RUIZ filed the required Section 8 Declaration.  On March 4, 2019, the Trademark Office issued an office action requiring a response within six months.  RUIZ's then trademark counsel did not receive that office action and, therefore, did not timely file the required response.  The Trademark Office then cancelled the Registration on October 29, 2019.  RUIZ learned of those facts on or about March 3, 2020.  Through new trademark counsel, RUIZ filed a petition to revive the Registration and accept a late response to the office action on the Section 8 Declaration.  RUIZ's petition to revive the Registration was granted on October 7, 2020 and the Trademark Office issued a Notice of Acceptance of the Section 8 Declaration on October 8, 2020.

16.     After five years of continuous use in commerce of a federally registered mark, the owner of the registration may obtain "incontestable" status for a registration by filing a "Section 15" Affidavit or Declaration.  15 U.S.C. § 1065.  RUIZ, through counsel, filed a Section 15 Declaration for the Registration on October 9, 2020.  . The trademark office acknowledged the Section 15 Declaration on March 1, 2021.

17.     The Registration is valid and incontestable.

### 3.     RUIZ's written exclusive distributor agreement

18.     In or about August 2012, RUIZ and Martinez signed a written agreement confirming the exclusive distributor relationship they orally agreed to in 2011.  A copy of the written agreement (referred to hereinafter as the "Exclusive Distributor Agreement" or "Agreement") is attached hereto as Exhibit B.  The Agreement provides that RUIZ has the exclusive right to distribute and market the Salsa Products throughout the United States, the continents of Europe and Asia, and the States in Mexico of Baja California, Sinaloa and Sonora.  The Agreement states that Martinez enters "into this Contract in order to convey 'THE PRODUCT' to 'THE DISTRIBUTOR' for its respective sale."

19.     The Agreement further states that Martinez will not provide directly or indirectly any of the Salsa Products to anyone other than RUIZ for distribution or marketing in any of RUIZ's exclusive distributor territories.

20.     The term of the Agreement is for the rest of RUIZ's life.  The Agreement grants to RUIZ the right to bequeath his rights under the Agreement to anyone agreed upon in writing by the parties to the Agreement.

21.     The Agreement forbids RUIZ from selling the Salsa Products using a mark that is different from the COSECHA P'URHEPECHA MARK, and in a bottle or other container that is different from the uniquely designed plastic bottle in which Martinez packages the Salsa Products.

22.     Martinez expressly acknowledges in the Agreement RUIZ's significant investment of labor and financial resources to possess the COSECHA

P'URHEPECHA MARK for his use in his exclusive distributor territories and to market the Salsa Products in the United States.

### 4.    Plaintiffs' sale of Salsa Products in the United States

23.    RUIZ had already begun selling the Salsa Products in the United States through P'URHEPECHA DV pursuant to his oral agreement with Martinez before they signed the Agreement.  When they entered into the oral agreement, Martinez's salsa business was a mom and pop operation.  Martinez was producing the Salsa Products entirely by hand.  Consequently, the production process was slow and the production volume was minimal.

### 5.    Plaintiffs' substantial investment to develop a market in the United States for the Salsa Products

24.    Plaintiffs' initial order of Salsa Products from Martinez was only one pallet consisting of 150 boxes, each box containing 24 bottles, and each bottle containing about 9 ounces of a salsa product.  Plaintiffs' orders continued to be only one pallet every two or so months for a time period, but the orders steadily increased as Plaintiffs' sales increased in the United States.  By the time the parties signed the Agreement, Plaintiffs' orders had increased to at least 8 pallets per month, thus resulting in Martinez having to develop a more sophisticated production process with appropriate equipment.  Martinez was able to do so with the financial assistance of RUIZ.

25.    Plaintiffs' great success in developing a market in the United States for the Salsa Products as explained below significantly expanded Martinez's business from a mom and pop minimal revenue operation to a sophisticated automated production operation that is generating substantial revenues with an ample profit.

26.    When RUIZ and Martinez entered into their oral agreement in 2011, none of the Salsa Products were being sold in the United States.  Consequently, Plaintiffs had to develop a market for the Products in the United States from scratch. Plaintiffs' significant investment of labor and financial resources which Martinez

acknowledges in the Agreement as noted above has been in part to develop that market.

27.     Plaintiffs initially focused their market development efforts to the Los Angeles and Orange Counties in California.  Once they established a market in these Counties, they expanded to other areas in California, and thereafter steadily continued to expand the market in the United States outside of California, including in the States of Washington, Oregon, Idaho, Utah, Nevada, Arizona, Colorado, New Mexico, Illinois, Wisconsin, Ohio, Georgia, New York, New Jersey and Florida.

28.     Plaintiffs' investment of labor and financial resources includes making changes to the packaging of the Salsa Products, particularly the labels placed on the bottles.  Plaintiffs modified the labels to comply with pertinent regulations and to make them more appealing to attract customers in the United States.  Changes were also made to the bottles to make them sturdier.  The purchase of shelf space from numerous retailers is also part of Plaintiffs' investment.

**B.**     **Defendants' Sale of Salsa Products and Use of COSECHA P'URHEPECHA MARK in the United States**

     **1.**     **Martinez breached Agreement due to Defendants' unlawful interference**

29.     Martinez ceased complying with his obligations under the Agreement to supply Salsa Products to RUIZ in 2019.  Martinez has not supplied any Salsa Products to RUIZ since December 2019 despite orders made by RUIZ since then.

30.     By December 2019, Plaintiffs' sales in the United States had increased to the point that RUIZ's orders to Martinez were 12 to 13 pallets of Salsa Products per month, equaling 1,800 to 1,950 boxes and 43,200 to 46,800 bottles of Products. Plaintiffs still have some inventory of Salsa Products available for sale, but as explained below, their ability to sell this inventory has been hampered by sales of the identical Salsa Products by Defendants.

31.     Martinez ceased supplying Salsa Products to RUIZ without any advance notice that he would do so.  RUIZ communicated with Martinez concerning the status of Martinez supplying Salsa Products in response to purchase orders. Martinez assured RUIZ that the ordered Products would be supplied, but they never were.

## 2.     RUIZ's lawsuit against Martinez

32.     RUIZ has sued Martinez in Mexico for breach of the Agreement.  RUIZ did so after he learned that Martinez was supplying Salsa Products to Defendants which, as explained below, Defendants are selling in the United States, including in California.

## 3.     Defendants' marketing and sale of Salsa Products in the United States

33.     In January 2020, Plaintiffs first learned that Defendants were in the process of marketing in the United States the identical salsa products produced by Martinez that Plaintiffs have been selling in the United States since 2011.  Defendants were well aware of the Exclusive Distributor Agreement between RUIZ and Martinez and that Plaintiffs had been selling the Salsa Products in the United States.

34.     Defendants are now selling the Salsa Products in the United States.  Plaintiffs are informed and believe, and based thereon allege, that California is one of the States where Defendants are selling the Salsa Products, or at a minimum, marketing the Products.

35.     Defendants are selling the Salsa Products using the identical bottle design used for the sale of the Salsa Products by Plaintiffs.  Defendants are also using a label that is similar to the label used for the sale of the Products by RUIZ.  Most importantly, Defendants are using the COSECHA P'URHEPECHA MARK to sell the Products.

///

///

1

2

**4.    YASA's registration of the "Cosecha Pʻurhepecha" as its trademark in the United States**

3    36.    In January 2020, Defendant YASA applied to the USPTO to register

4    "Cosecha Pʻurhepecha" as a trademark to be used for the sale of "salsa, hot sauce".

5    "Cosecha Pʻurhepecha" is practically identical to the COSECHA P'URHEPECHA

6    MARK, the only difference is that the MARK includes the word "Clasica's" at the

7    end.  In September 2020, YASA submitted to the USPTO in connection with its

8    application a Statement of Use which includes a Declaration signed by YASA's

9    legal counsel, Michael Swartz, stating in part that "he believes the applicant is the

10   owner of the mark sought to be registered," that the mark applied for "is in use in

11   commerce on or in connection with all the goods/services in the application," and

12   that a drawing containing the mark as discussed below "shows the mark as used on

13   or in connection with the good/services … in commerce."  The Statement of Use

14   also includes a copy of a photograph of a bottle which appears to contain a salsa

15   product.  The bottle has a label on it that is identical to Plaintiff's registered

16   COSECHA P'URHEPECHA MARK.  A true and correct copy of the statement of

17   use submitted to the USPTO on behalf of YASA is attached as Exhibit C and

18   incorporated herein.  The following is a copy of the photograph YASA submitted

19   with its Statement of Use:

20

21

22

23    

24

25

26   ///

27   ///

28

37.     Significantly, Mr. Swartz also states in his Declaration that to the best of his "knowledge and belief, no other persons … have the right to use the mark in commerce … as to be likely when used on or in connection with the goods/services … of such other persons, to cause confusion or mistake, or to deceive."  Mr. Swartz made this representation to the United States government despite, as explained below, his unequivocal knowledge since at least June 2020 of Plaintiffs' long time use of the COSECHA P'URHEPECHA MARK.  Mr. Swartz signed YASA's statement of use under penalty of perjury: "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true." (Exhibit C).

38.     Based in part on the fraudulent Statement of Use, the USPTO granted Registration Number 6,202,125 to YASA.  A true and correct copy of the Registration Certificate is attached as Exhibit D and incorporated herein.

### 5.     Plaintiffs' cease and desist demands to Defendants

39.     On June 26, 2020, Plaintiffs' legal counsel sent a letter to Defendants advising them of RUIZ's ownership of the COSECHA P'URHEPECHA MARK and use of the Mark since 2011 to sell salsa in the United States.  The letter also advised Defendants of RUIZ's exclusive distributor relationship with Martinez and that Defendants actions in selling Salsa Products in the United States were disrupting the relationship.  The letter demands in part that Defendants cease their use of the COSECHA P'URHEPECHA MARK, abandon their trademark application to the USPTO discussed above, and inform Martinez that Defendants will no longer purchase product from him.  Defendants did not comply.  Instead, Defendants' legal counsel, Mr. Swartz, responded with a letter dated July 1, 2020 advising in part that he was "reviewing the facts and allegations of the present case

so as to properly inform our client of their rights and potential liability." Mr. Swartz also stated that Defendants had "instructed" him to inform Plaintiffs' counsel that they had "not yet begun using the 'COSECHA P'URHEPECHA' trademark in interstate commerce."

40.     Not having received any further communication from Defendants or Mr. Swartz, Plaintiffs' counsel followed up with a letter to Mr. Swartz on August 12, 2020 advising that contrary to their representation, Defendants were using the COSECHA P'URHEPECHA MARK in interstate commerce. The letter includes copies of photographs proving Defendants' use. The letter requests a response by August 21, 2020 on whether Defendants will comply with the demands in Plaintiffs counsel's June 26, 2020 letter. Mr. Swartz responded with a letter dated August 27, 2020 again stating in part that he was "reviewing the facts and allegations of the present case so as to properly inform our client of their rights and potential liability."

### 6.     Defendants' unlawful conduct has harmed Plaintiffs

41.     Defendants' sale of the Salsa Products has caused confusion in the United States market. Part of the confusion is due to the Products sold by Defendants being placed for sale by retailers in the shelf space immediately adjacent to the shelf space of the Products sold by Plaintiffs. Plaintiffs' have received inquiries from brokers and retailers regarding the reason for Defendants selling the same products and whether Plaintiffs' will continue to distribute the Salsa Products in the United Sates. The inquiries are due to Plaintiffs being recognized by brokers and retailers in the United States as the exclusive distributors of the Salsa Products in the United States due to their ten year history of selling the Products.

42.     Defendants' sale of the Salsa Products in the United States has also caused Plaintiffs to incur significant damages, which include the loss of profits the amount of which is estimated to be at least $7 million based on Plaintiffs' sales of the Salsa Products and the lifetime term of the Agreement.

# **FIRST CAUSE OF ACTION**

Interference with Contractual Relationship

(By Plaintiffs against all Defendants)

43.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     As discussed above, RUIZ and Martinez entered into a contractual relationship pursuant to which RUIZ was the exclusive distributor of Salsa Products in the United States and other geographic areas.  Defendants were aware of this contractual relationship and in 2019 or early 2020, Defendants interfered with the relationship by causing Martinez to cease supplying Salsa Products to Plaintiffs and instead supply the Products to Defendants, and thereby lead Martinez to breach the Agreement.  Defendants knew or should have known that Plaintiffs would be significantly harmed by their conduct.

45.     Defendants were well aware that Plaintiffs had been selling the Salsa Products in the United States well before Defendants engaged in their unlawful conduct, and were aware that Plaintiffs were doing so pursuant to RUIZ's exclusive distributorship rights under the Agreement.

46.     As discussed above, through their legal counsel's June 26, 2020 and August 12, 2020 letters to Defendants and their legal counsel, Plaintiffs confirmed to Defendants RUIZ's exclusive distributor contractual relationship with Martinez and demanded that Defendants cease their interference with that relationship, but Defendants have refused to so.

47.     Plaintiffs have suffered substantial economic damages as a result of Defendants' unlawful conduct, the amount of which is subject to proof at trial.  The damages include the loss of profits and income resulting from lost sales by Plaintiffs of Salsa Products.  The amount of this loss is estimated to be at least $7 million. The damages also include, but are not limited to, costs incurred based on the expectation that Martinez would continue to supply Salsa Products pursuant to his

contract with RUIZ.  These costs include the purchase of shelf space from retailers for the display of the Salsa Products for purchase by customers of the retailers, marketing costs, and legal fees paid to legal counsel in Mexico for services to facilitate the importation of the Salsa Products to the United States.  The damages further include the legal costs incurred in connection with RUIZ's pending lawsuit against Martinez discussed above.

48.     Defendants will continue with their unlawful interference and to be unjustly enriched from their unlawful conduct unless Defendants are restrained and enjoined by order of the Court.  Plaintiffs have no remedy at law other than injunctive relief to cease Defendants' unlawful interference and unjust enrichment.

49.     Defendants' interference was malicious, oppressive and/or fraudulent within the meaning of California *Civil Code* § 3294, thus entitling Plaintiffs to recover from Defendants punitive or exemplary damages in an amount subject to proof at trial.

<u>**SECOND CAUSE OF ACTION**</u>

Tort of Another

(By RUIZ against all Defendants)

50.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

51.     As discussed above, Defendants interfered with the RUIZ/Martinez contractual relationship which led Martinez to cease the relationship and thereby breach his Agreement with RUIZ.  RUIZ was therefore compelled to file the lawsuit against Martinez as discussed above to protect his rights under the Agreement.

52.     Absent Defendants interference with the RUIZ/Martinez contractual relationship, RUIZ's lawsuit against Martinez, and thereby the associated costs incurred by RUIZ, would not have been necessary.  RUIZ is therefore entitled to recover from Defendants the costs, including attorney's fees, he has incurred and will incur in connection with the lawsuit according to proof at trial.

**THIRD CAUSE OF ACTION**

(Federal Trademark Infringement)

(By RUIZ against All Defendants)

53.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

54.     This claim for relief is an action for federal trademark infringement pursuant to the Federal Trademark Act, 15 U.S.C. § 1114, *et seq.*

55.     As alleged herein, RUIZ has a valid and subsisting incontestable federal trademark registration for the COSECHA P'URHEPECHA MARK and has marketed, advertised and sold salsa products to retailers and the public using the COSECHA P'URHEPECHA MARK since at least 2011.

56.     As alleged herein, Defendants have marketed, advertised and sold, or plan to sell, and will continue to market, advertise and sell salsa products to retailers and the public using the COSECHA P'URHEPECHA MARK.

57.     Defendants' marketing, advertising and sale of salsa products in commerce using the COSECHA P'URHEPECHA MARK has caused and will continue to cause confusion in the minds of consumers to the detriment of Plaintiffs.

58.     Defendants' use of the COSECHA P'URHEPECHA MARK as alleged herein, and marketing, advertising and sale of salsa products using the COSECHA P'URHEPECHA MARK was done without the knowledge, consent or permission of RUIZ and continues without his consent or permission.

59.     Defendants have violated the trademark rights of RUIZ under the Federal Trademark Act, thereby giving rise to a cause of action against Defendants under 15 U.S.C. § 1114.

60.     RUIZ will be irreparably harmed unless Defendants are immediately and permanently enjoined from any further use of the COSECHA P'URHEPECHA MARK and any further marketing, advertising or sale of salsa products using the COSECHA P'URHEPECHA MARK.

61.     RUIZ has no adequate remedy at law and serious damage to his trademark rights will result unless Defendants' wrongful use of the COSECHA P'URHEPECHA MARK is enjoined by the Court.

62.     Defendants have continued to use the COSECHA P'URHEPECHA MARK notwithstanding their constructive and actual knowledge of RUIZ's superior trademark rights as alleged herein.  Defendants' infringement of Plaintiffs' trademark rights constitutes intentional, willful, knowing and deliberate trademark infringement.

63.     Defendants' infringement has caused RUIZ to suffer damages in an amount not yet fully determined and has caused Defendants to gain revenues and profit in an amount unknown at this time.  Pursuant to 15 U.S.C. § 1117(a), RUIZ is entitled to an award of monetary damages in an amount equal to the losses suffered by RUIZ and the revenues and/or profits gained by Defendants.  Such damages should be augmented as provided by 15 U.S.C. § 1117(a).

64.     Pursuant to 15 U.S.C. § 1117(a), any monetary damages awarded to RUIZ should be trebled.

65.     Pursuant to 15 U.S.C. § 1117(a), RUIZ is entitled to an award of attorneys' fees and costs of suit.

## FOURTH CAUSE OF ACTION

(Violation of Lanham Act Section 43(a))

(By RUIZ against all Defendants)

66.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

67.     This claim for relief is for trademark and trade dress infringement in violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a).

68.     The actions of Defendants as alleged herein constitute unfair competition and false advertising in violation of Lanham Act Section 43(a).

69.     RUIZ will be irreparably harmed unless Defendants are enjoined from any further use of the COSECHA P'URHEPECHA MARK, from any further marketing, advertising and sale of salsa products under the COSECHA P'URHEPECHA MARK and using the same uniquely designed plastic bottle used by RUIZ, and from any further acts of unfair competition and false advertising relating to the COSECHA P'URHEPECHA MARK and use of such bottle.

70.     RUIZ has no adequate remedy at law and serious damage to his trademark and trade dress rights will continue to result unless Defendants' wrongful use of the COSECHA P'URHEPECHA MARK and the bottle in which they are selling salsa products is enjoined by the Court.

71.     Defendants have continued to use the COSECHA P'URHEPECHA MARK and the bottle in which they are selling salsa products notwithstanding their constructive and actual knowledge of RUIZ's superior trademark and trade dress rights as alleged herein.  Defendants' infringement of Plaintiffs' trademark and trade dress rights constitutes intentional, willful, knowing and deliberate trademark and trade dress infringement.

72.     Defendants' infringement has caused RUIZ to suffer damages in an amount not yet fully determined and has caused Defendants to gain revenues and profit in an amount unknown at this time.  Pursuant to 15 U.S.C. § 1117(a), RUIZ is entitled to an award of monetary damages in an amount equal to the losses suffered by RUIZ and the revenues and/or profits gained by Defendants.  Such damages should be augmented as provided by 15 U.S.C. § 1117(a).

73.     Pursuant to 15 U.S.C. § 1117(a), any monetary damages awarded to RUIZ should be trebled.

74.     Pursuant to 15 U.S.C. § 1117(a), RUIZ is entitled to an award of attorneys' fees and costs of suit.

**FIFTH CAUSE OF ACTION**

(Common Law Trademark Infringement)

(By RUIZ against all Defendants)

75.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

76.     Defendants' actions as alleged herein constitute common law trademark infringement.

77.     RUIZ will be irreparably harmed unless Defendants are enjoined from any further use of the COSECHA P'URHEPECHA MARK, from any further marketing, distribution and sale of salsa products under the COSECHA P'URHEPECHA MARK, and from any further acts of trademark infringement relating to the COSECHA P'URHEPECHA MARK.

78.     RUIZ has no adequate remedy at law and serious damage to his rights will result unless Defendants' wrongful use of the COSECHA P'URHEPECHA MARK is enjoined by the Court.

79.     Defendants' actions as alleged herein constitute intentional, willful, knowing and deliberate trademark infringement.

80.     As a direct and proximate result of the acts of trademark infringement alleged herein, RUIZ has suffered, and will continue to suffer, damages in an amount not yet fully determined.  Likewise, as a direct and proximate result of the acts of trademark infringement as alleged herein, Defendants wrongfully have gained revenues and profit in an amount unknown at this time.

81.     Defendants committed the acts of trademark infringement alleged herein intentionally, deliberately, maliciously, with intent to injure and oppress RUIZ, and in conscious disregard of the rights of RUIZ.  RUIZ accordingly is entitled to an award of punitive and exemplary damages in an amount sufficient to punish and deter Defendants and make them an example to others.

## SIXTH CAUSE OF ACTION

(Cancellation of Trademark Registration)

(By RUIZ against YASA)

82.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

83.     This claim for relief is an action for cancellation of a federal trademark registration pursuant to the Federal Trademark Act, 15 U.S.C. § 1114, *et seq.* Specifically, 15 U.S.C. § 1119 provides that this Court may cancel a federal trademark registration.

84.     As alleged herein, YASA owns United States Trademark Registration No. 6,202,125.

85.     As alleged herein, RUIZ is the owner of incontestable United States Trademark Registration No. 4,285,208 for the COSECHA P'URHEPECHA MARK applied to salsa.

86.     RUIZ has used one or more variations of his COSECHA P'URHEPECHA MARK in association with salsa since at least 2011.  Such use has been valid and continuous since the date of the first use and has not been abandoned.

87.     RUIZ will suffer commercial damage if Registration No. 6,202,125 is not canceled.

88.     RUIZ's COSECHA P'URHEPECHA MARK is symbolic of the extensive goodwill and consumer recognition built through substantial effort and expense in advertising, promoting, and providing salsa to the consuming public for approximately ten years.

89.     RUIZ is informed and believes, and alleges on that basis, that his use of the COSECHA P'URHEPECHA MARK far predates any use of Defendants' COSECHA P'URHEPECHA mark by Defendants.  Accordingly, RUIZ is informed and believes, and alleges on that basis, that he has priority of use with respect to COSECHA P'URHEPECHA marks in association with salsa and hot sauce in the

United States.

90.     Defendants' COSECHA P'URHEPECHA mark is confusingly similar to RUIZ's COSECHA P'URHEPECHA MARK.  Both marks are applied to exactly the same products.  Accordingly, consumers have been confused and will continue to be confused about the source, origin or sponsorship of RUIZ's and Defendants' respective products.

91.     In view of the confusing similarity of the respective marks and goods provided thereunder, RUIZ alleges that Defendants' COSECHA P'URHEPECHA mark so resembles RUIZ's COSECHA P'URHEPECHA MARK as to cause confusion, mistake, and deception.

92.     Continued use and registration of Defendants' COSECHA P'URHEPECHA mark will continue to cause confusion, mistake or deception since the public is likely to continue to be deceived as to the source, sponsorship or affiliation of Defendants' goods and falsely infer a connection with or endorsement by RUIZ.

93.     Defendants' COSECHA P'URHEPECHA mark does not and cannot exclusively identify goods provided by Defendant.  Accordingly, Defendants' COSECHA P'URHEPECHA mark is not capable of serving to designate Defendants as the source of the goods provided in association with Defendants' COSECHA P'URHEPECHA mark.  Therefore, Defendants are not entitled to registration of Defendants' COSECHA P'URHEPECHA mark.

94.     On information and belief, Defendant, after notice of RUIZ's trademark rights have continued to use Defendants' COSECHA P'URHEPECHA mark in order to trade on the extensive good will owned and acquired by RUIZ through the expense and efforts of Plaintiffs over an extensive period of time.

95.     On information and belief, Defendants intend to mislead the public into believing they are associated with or endorsed by RUIZ in order to gain an unfair advantage in the marketplace.  Defendants, therefore, are not entitled to continued registration of Defendants' COSECHA P'URHEPECHA mark.

96.     The continued registration and use by Defendants of their COSECHA P'URHEPECHA mark will deprive RUIZ of the exclusive use of his trademark, will infringe RUIZ's COSECHA P'URHEPECHA MARK, will violate RUIZ's rights therein, will expose RUIZ to further violation of its trademark rights by others, and will diminish the commercial value of RUIZ's COSECHA P'URHEPECHA MARK.

97.     It is unfair and inequitable to allow Defendants to trade on and benefit from RUIZ's goodwill and Plaintiffs' investment of time and money in the development, promotion and use of the COSECHA P'URHEPECHA MARK.  Therefore, Defendant's registration should be canceled and Defendants should choose a new mark which is not confusingly similar to RUIZ's COSECHA P'URHEPECHA MARK and which is not an unfair attempt to take advantage of RUIZ's and Plaintiffs' years of work and financial investment.

## SEVENTH CAUSE OF ACTION

(Violation of California *Business and Professions Code* §§ 17200, *et seq.*)

(By Plaintiffs against all Defendants)

98.     Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

99.     This claim for relief is for unfair competition and false advertising in violation of California *Business and Professions Code* §§ 17200, *et seq*.

100.    Defendants' actions as alleged herein constitute unfair competition and false advertising in violation of California *Business and Professions Code* §§ 17200, *et seq*.

101.    Defendants' actions as alleged herein also constitute unlawful business practices within the meaning of California *Business and Professions Code* §§ 17200, *et seq.* in that they, *to wit*, violate federal statutes referenced herein and constitute unlawful interference with contractual and other business relationships and prospective economic advantages.

102.   Defendants' actions as alleged herein further constitute unlawful business practices within the meaning of California *Business and Professions Code* §§ 17200, *et seq.* in that members of the public are likely to be deceived into believing that Defendants' COSECHA P'URHEPECHA branded salsa products are in some way associated with Plaintiffs' COSECHA P'URHEPECHA salsa products, and the likelihood of confusion and deception is exacerbated because the likely consumers of Defendants' COSECHA P'URHEPECHA branded salsa products, and Plaintiffs' COSECHA P'URHEPECHA salsa products, consist of the same consumers.

103.   Plaintiffs will be irreparably harmed unless Defendants are enjoined from any further use of the COSECHA P'URHEPECHA MARK, from any further marketing, advertising and sale of salsa products under the COSECHA P'URHEPECHA MARK and from any further acts of unfair competition and false advertising relating to the COSECHA P'URHEPECHA MARK.

104.   Plaintiffs have no adequate remedy at law and serious damage to their rights will result unless Defendants' wrongful use of the COSECHA P'URHEPECHA MARK is enjoined by the Court.

105.   Defendants' actions as alleged herein constitute intentional, willful, knowing and deliberate unfair competition and false advertising.

106.   Defendants' acts of unfair competition and false advertising have caused Defendants to gain revenues and profit in an amount unknown at this time.  Pursuant to California *Business & Professions Code* § 17203, Plaintiffs are entitled to a disgorgement and restitution in an amount equal to the revenues and/or profits gained by Defendants.

## EIGHTH CAUSE OF ACTION

(Common Law Unfair Competition)

(By Plaintiffs against all Defendants)

107.   Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

108.   Defendants' actions as alleged herein constitute common law unfair competition.

109.   Plaintiffs will be irreparably harmed unless Defendants are enjoined from any further use of the COSECHA P'URHEPECHA MARK, from any further marketing, distribution and sale of salsa products under the COSECHA P'URHEPECHA MARK, and from any further acts of unfair competition relating to the COSECHA P'URHEPECHA MARK.

110.   Plaintiffs have no adequate remedy at law and serious damage to their rights will result unless Defendants' wrongful use of the COSECHA P'URHEPECHA MARK is enjoined by the Court.

111.   Defendants' actions as alleged herein constitute intentional, willful, knowing and deliberate unfair competition.

112.   As a direct and proximate result of the acts of unfair competition alleged herein, Plaintiffs have suffered, and will continue to suffer, damages in an amount not yet fully determined.  Likewise, as a direct and proximate result of the acts of unfair competition as alleged herein, Defendants wrongfully have gained revenues and profit in an amount unknown at this time.  Plaintiffs are entitled to an award of monetary damages in an amount equal to the losses suffered by Plaintiffs and the revenues and/or profits gained by Defendants.

113.   Defendants committed the acts of unfair competition alleged herein intentionally, deliberately, maliciously, with intent to injure and oppress Plaintiffs, and in conscious disregard of Plaintiffs' rights.  Plaintiffs are accordingly entitled to an award of punitive and exemplary damages in an amount sufficient to punish and deter Defendants and make them an example to others.

///

///

///

///

### NINTH CAUSE OF ACTION

Intentional Interference with Prospective Economic Advantage

(By Plaintiffs against all Defendants)

114.   Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

115.   Plaintiffs have established economic relationships with numerous retailers and distributors/brokers to and through which Plaintiffs have sold Salsa Products. These relationships have had the probability of substantial economic benefits to Plaintiffs as a result of future sales by Plaintiffs of Salsa Products.

116.   Defendants have been aware of Plaintiffs economic relationships with the retailers and distributors/brokers, particularly since Defendants are aware of retailers who have sold Salsa Products supplied by Plaintiffs and of distributors/brokers who have done business with Plaintiffs in the distribution of Salsa Products in the United States.  Defendants have intentionally interfered and disrupted these relationships by, *to wit*, causing or influencing Martinez to breach his contractual relationship with RUIZ, by selling Salsa Products to and through the same retailers and distributors/brokers, and by infringing on RUIZ's trademark and trade dress rights. Defendants knew or should have known that their conduct would cause Plaintiffs to lose economic benefits associated with the relationships.

117.   Defendants' unlawful conduct has harmed and will continue to harm Plaintiffs.  This harm includes, but is not limited to, irreparable injury to Plaintiffs' business, reputation and goodwill.  The harm also includes damages in an amount subject to proof at trial.  The damages include, but are not limited to, the loss of profits and income resulting from the loss of sales by Plaintiffs of Salsa Products. The amount of this loss is estimated to be at least $7 million.

118.   Defendants will continue with their unlawful interference and to be unjustly enriched from their unlawful conduct unless Defendants are restrained and enjoined by order of the Court.  Plaintiffs have no remedy at law other than injunctive relief

to cease Defendants' unlawful interference and unjust enrichment.

119.   Defendants' unlawful conduct is malicious, oppressive and/or fraudulent within the meaning of California *Civil Code* § 3294, thus entitling Plaintiffs to recover from Defendants punitive or exemplary damages in an amount subject to proof at trial.

## **TENTH CAUSE OF ACTION**

Negligent Interference with Prospective Economic Advantage

(By Plaintiffs against all Defendants)

120.   Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

121.   Plaintiffs have established economic relationships with numerous retailers and distributors/brokers to and through which Plaintiffs have sold Salsa Products. These relationships have had the probability of substantial future economic benefits to Plaintiffs as a result of future sales by Plaintiffs of Salsa Products.

122.   Defendants have been aware of Plaintiffs economic relationships with the retailers and distributors/brokers, particularly since Defendants are aware of retailers who have sold Salsa Products supplied by Plaintiffs and of distributors/brokers who have done business with Plaintiffs in the distribution of Salsa Products in the United States.  Defendants have negligently interfered and disrupted these relationships by, *to wit*, causing or influencing Martinez to breach his contractual relationship with RUIZ, by selling Salsa Products to and through the same retailers and distributors/brokers, and by infringing on RUIZ's trademark and trade dress rights. Defendants knew or should have known that their conduct would cause Plaintiffs to lose economic benefits associated with the relationships.

123.   Defendants' unlawful conduct has harmed and will continue to harm Plaintiffs.  This harm includes, but is not limited to, irreparable injury to Plaintiffs' business, reputation and goodwill.  The harm also includes damages in an amount subject to proof at trial.  The damages include, but are not limited to, the loss of

profits and income resulting from the loss of sales by Plaintiffs of Salsa Products. The amount of this loss is estimated to be at least $7 million.

124.   Defendants will continue with their unlawful interference and to be unjustly enriched from their unlawful conduct unless Defendants are restrained and enjoined by order of the Court.  Plaintiffs have no remedy at law other than injunctive relief to cease Defendants' unlawful interference and unjust enrichment.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (By Plaintiffs against all Defendants)

125.   Plaintiffs, by this reference, incorporate the allegations of paragraphs 1 through 42 of this Complaint as if fully set forth herein.

126.   Defendants have been and will continue to be enriched unjustly by their unlawful conduct as alleged herein. This enrichment includes any and all profits they have made and will make from their sales of Salsa Products.

127.   Plaintiffs are entitled to recover from Defendants their unjust enrichment, including all profits, gains and any other benefits Defendants have obtained and will obtain as a result of their unlawful conduct.  The amount of the profits and the gains and other benefits are subject to proof at trial.

128.   Defendants will continue to be unjustly enriched from their unlawful conduct unless they are restrained and enjoined by order of the Court.  Plaintiffs have no remedy at law other than injunctive relief to cease Defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for relief against Defendants as follows:

1.      For a preliminary and permanent injunction restraining and enjoining Defendants, and their agents, servants, employees, and all others in active concert or participation with them, as follows:

(a)     From further using the "COSECHA P'URHEPECHA" mark;

(b)     From further using the uniquely designed plastic bottle in which the Salsa Products are sold;

(c)     From further infringing RUIZ's trademark and trade dress rights;

(d)     From further advertising, promoting, distributing, offering for sale, and/or selling, any salsa using the "COSECHA P'URHEPECHA" mark or any other mark confusingly similar to the "COSECHA P'URHEPECHA" mark;

(e)     From further interfering with RUIZ's contract with Martinez and economic relationship with brokers and distributors as alleged herein; and

(f)     From further acts of false advertising and unfair competition as alleged herein.

2.     For an award of damages suffered by Plaintiffs as a result of Defendants' interference with the contractual relationship and prospective economic advantages as alleged herein;

3.     For an award of damages suffered by Plaintiffs, plus any revenues or profits earned by Defendants, as a result of Defendants' trademark infringement, trade dress infringement, violations of Lanham Act Section 43, unfair competition, and false advertising, in an amount to be proven at trial.

4.     For an award of augmented and treble damages as alleged herein.

5.     For an award of punitive and exemplary damages in an amount to be proven at trial but sufficient to punish and deter Defendants.

6.     For disgorgement and restitution of revenues or profits gained by Defendants by their actions in violation of California *Business and Professions Code* § 17200.

7.     For an order to the Director of the United States Patent and Trademark Office to cancel YASA's United States Trademark Registration No. 6,202,125.

8.     For an award of attorneys' fees and litigation expenses to the maximum extent allowed by law.

9.     For pre-judgment interest.

10.    For costs of suit incurred herein.

11.    For such other and further relief as the court may deem just and proper.


DATED:  March 4, 2021                    MUSICK, PEELER & GARRETT LLP


                                        By: _____
                                            Juan A. Torres
                                            Whit Bivens
                                            Attorneys for Plaintiffs Jose Rigoberto
                                            Ruiz Rosas and P'urhepecha Del Valle,
                                            Inc.


## **DEMAND FOR JURY TRIAL**

    Plaintiffs hereby demand a trial by jury.


DATED:  March 4, 2021                    MUSICK, PEELER & GARRETT LLP


                                        By: _____
                                            Juan A. Torres
                                            Whit Bivens
                                            Attorneys for Plaintiffs Jose Rigoberto
                                            Ruiz Rosas and P'urhepecha Del Valle,
                                            Inc.